PARR v. LINDLER.

1. JUDGMENTS—COLLATERAL ATTACK.—In action for the recovery of real property purchased by defendant under execution against plaintiff's intestate, parol testimony is inadmissible to impeach the judgment and execution under which the defendant claims, upon grounds not apparent upon the face of the record.

2. FORECLOSURE—JUDGMENT FOR DEFICIENCY—VOID SALE.—A decree which directs judgment, and authorizes execution for any deficiency that may exist after a sale of the premises ordered by this decree, is to that extent void, and, though unappealed from, no execution can be issued under such decree. A sale under an execution issued for the deficiency remaining after the sale, but not fixed by judgment of the court on report to it of such deficiency, is a void sale, and carries no title.

3. CASE CRITICISED.—This case distinguished from the case of Freer *v.* Tupper, 21 S. C., 75.

4. ADDITIONAL GROUND TO SUPPORT VERDICT.—The correctness of an instruction to the jury cannot be considered under a ground taken by respondent assailing such instruction as an additional ground for sustaining the verdict in favor of respondent. *Per* MR. CHIEF JUSTICE McIVER.

MR. JUSTICE POPE *dissenting.*

Before NORTON, J., Fairfield, September, 1892.

This was an action by Henry L. Parr against Simeon O. Lindler, commenced in 1892, to recover possession of a tract of land purchased by defendant as the property of plaintiff's intestate father at sheriff's sale, under execution issued in two cases of foreclosure instituted against the administrator and heir at law of intestate. The decree of foreclosure in these cases directed a sale and a report by the sheriff of any deficiency, and that the administrator "do pay the same to the plaintiff, with interest from the date of such report, and that the plaintiff have execution therefor." After sale and report on deficiency, the plaintiffs, without any further action by the court, entered up judgments, and issued executions under which the sale was made. The judge charged that the Clowney case would not support the sale, on grounds not necessary to mention.

*Messrs. Ragsdale & Ragsdale,* for appellant.

*Messrs. Barron & Ray,* contra.

December 1, 1893. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. This action was brought for the recovery of possession of a tract of land, originally belonging to one Henry W. Parr, and for convenience known as the "Mill tract." It was admitted that the said Henry W. Parr was the common source of title, and that the plaintiff, Henry L. Parr, as his only son and heir, was entitled to the land, unless he had been in some way divested of the title thereto. The defendant, however, claimed that he has a chain of title from Henry W. Parr, and if that chain of title is what he claims it to be, then he would defeat the title of the heir at law. His claim is that under certain executions this land was sold by the sheriff, and purchased by one Freshley at sheriff's sale, and by subsequent chain of title has become the property of this defendant. This makes it necessary to consider the force and effect of these proceedings under which the land was sold by the sheriff.

Some time prior to 1858, Henry W. Parr, of Fairfield, exe-

cuted to W. R. Robertson, then commissioner in equity, a bond for land purchased at his official sale, and to secure the same gave two mortgages of two separate tracts of land—one to the commissioner himself and the other to one Coleman, one of his sureties on his bond; and in 1871, he, the said Parr, executed another bond and mortgage to one Edward Pollard of still a different tract of land. In 1876, the said Henry W. Parr died intestate, seized and possessed of some personalty, and several tracts of land besides these mortgaged as above stated, and leaving as his only heir at law a son, Henry L. Parr, then an infant of tender years. Letters of administration on the personal estate of the deceased Parr was granted to one William B. Elkin. Soon after two separate actions were brought against the said heir and administrator, for the purpose of foreclosing the mortgages above described as having been executed by the intestate Parr in his lifetime, entitled as follows: (No. 1.) Clowney as clerk *vs.* Henry L. Parr and William B. Elkin as administrator, &c. (No. 2.) Edward Pollard *vs.* Henry L. Parr and William B. Elkin as administrator. The records of these cases were admitted in evidence, and it appeared that in each case the lands mortgaged were sold, and for an alleged deficiency an execution was issued by the clerk, and that under such execution issued in the case of "Clowney as clerk," the sheriff levied and sold the "Mill tract" of land of the deceased mortgagor, Henry W. Parr, which was not included in any of the mortgages.

The plaintiff insists, therefore, that the whole proceedings were void, for the reason that there was really no judgment in the aforesaid cases, or either of them, which authorized the issuing of an execution against the estate of the intestate, real or personal. *First.* He offered parol testimony tending to contradict the records, upon the alleged ground that, being under fourteen years of age at the time the actions were brought, he was not *personally* served with summons, as the law required, and, therefore, the whole proceedings were void as to him, as not having been made a party. *Second.* He further insists, that from a mere inspection of the records, it appears that the execution under which the land was sold, was absolutely void, as

in a proceeding to foreclose a mortgage, a judgment for a deficiency can be had only when the sale is completed, and it can only be known what the deficiency will be upon the coming in of the report of sales and the confirmation thereof. *Third.* He further insisted that, even if the proceeding under which the "Mill tract" of land was sold by the sheriff was perfectly regular and legal, he would still be entitled to recover the land, upon the ground that he was entitled to a homestead in the land; and the sheriff not having done his duty in laying it off to him, the sheriff had no authority to levy and sell the same.

The judge charged the jury fully upon the whole case, but we will not attempt to consider all the questions discussed by him, but confine ourselves to the points complained of. Under the charge the jury found for "the defendant," and the appeal comes to this court upon the following exceptions by plaintiff: (1.) For that his honor erred in charging the jury the following : "The homestead law, as it existed at that time, gave to the plaintiff Parr an exemption of $1,000 of real estate, to be selected by himself, until he arrived at the age of twenty-one years, and provided that the remainder of that land might be sold under execution. The then defendant, now plaintiff, proves that he is now twenty-three years of age. This action was commenced this year, so that he would not be entitled, even if the other judgment was out of the way, to recover possession of this land, the term for which it was exempted to him having expired before the commencement of this action." (2.) For that his honor should have charged the jury, that the homestead laws create no new estate, nor do they invest estates already existing with any new qualities or restrictions, but secures and provides for an "exemption" by forbidding the process of the court to sell certain property for the payment of debts; and that if the jury believe that the plaintiff's ancestor owned the land in dispute in fee, that such fee, upon his death intestate, descended to his heirs, who upon such showing would be entitled to recover, unless the defendant could prove title out of him by some process or operation of law. (3.) For that his honor should have charged the jury, that the judgments and executions, through which the defendant claimed title, were

void, from a mere inspection of the record, and should have instructed the jury that an execution can not be issued for a deficiency on a decree for foreclosure until there has been a sale, a judicial ascertainment of such deficiency, and a judgment entered therefor.   (4.) For that his honor erred in refusing to allow the plaintiff to prove that the judgments and executions, through which the defendant claims, were fraudulent and void, and that such fraud was known to the defendant and to all the parties through whom the land in dispute passed to him.

The defendant also gave notice that, on the hearing of the appeal herein, he would ask that the judgment appealed from be sustained on other grounds than those named by the trial judge.   "1. His honor correctly excluded the question of homestead from the consideration of the jury, for the additional reason, that the land in dispute was not the family residence, nor lands appurtenant, of the judgment debtor, when the Pollard debt was contracted, nor at any time thereafter.   And the plaintiff has never resided on nor been in possession of said lands, and has never been entitled to a homestead therein.   2. The sheriff's deed conveying the land in dispute is fully supported by the judgment, execution, and sale in case of Samuel B. Clowney as clerk *vs.* Henry L. Parr and W. B. Elkin as administrator," &c.

From the view which the court takes, it will not be necessary to consider the different questions debated as to the alleged right to homestead, the alleged payment in fact of the case of "Clowney, as clerk," or the alleged incapacity of Sheriff Ruff (on account of interest) to make the sale under the execution in that case.   As it seems the most natural, we will consider the other exceptions in their inverse order.

Exception four of the plaintiff complains of error in refusing to allow him to offer parol testimony to impeach the judgments and executions through which the defendant claims.

1   The records were in evidence, and did not disclose on their face any jurisdictional infirmity, but in that regard seemed to be *prima facie* regular.   We think, therefore, without going again into the argument, that the testimony offered was not admissible for the purpose indicated in this collateral

proceeding, not being a direct proceeding instituted for that purpose. We think there was no error in refusing to admit the testimony. See *Turner* v. *Malone*, 24 S. C., 398.

Exception third of plaintiff makes the point, that the judge erred in charging that the judgments under which the defendant claims, were not, as alleged, void from the mere inspection of the records, but were valid, upon which executions for deficiencies could be issued. In subdivision 7 of section 188 of the Code, it is declared, that "In actions to foreclose mortgages, the court shall have power to adjudge and direct the payment by the mortgagor of any residue of the mortgage debt that may remain unsatisfied after a sale of the mortgaged premises, in cases in which the mortgagor shall be personally liable for the debt secured by such mortgage," &c. When must the order for such payment be made? The judge charged as follows: "Upon an inspection of this record, and having considered the objections raised by plaintiff's counsel, I have concluded that although there are irregularities in them, that they are within the jurisdiction of the court, and when rendered were the judgments of the court, and that they were binding and valid judgments of the court. Counsel have called my attention to the case of Young against somebody, in which it was adjudged that no judgment can be rendered for the deficiency at the time that a judgment foreclosing the mortgage was rendered. The judgment of the court in this case has been rendered. If an appeal had been taken, the judgment would have been reversed, as in the case of Young; but the case of Freer and Tupper has been decided, and although prior to the case of Young, I don't think that the judgment pronounced in that case is affected by the case of Young, because, in the case of Freer and Tupper, the question came up, as it does in this case, upon a question as to whether the judgment was sufficient or not in another case, and not upon a direct proceeding to set aside the judgment. * * * The judgment in these two cases was this: that so much was due, and that the land (mortgaged) be sold and applied to that judgment, and that the defendant (plaintiff) have execution for the deficiency when the report of sales was made. In one of the cases no report of the sales was

made, but in the other the report of sales was made, and no order confirming the sales. It shows the deficiency, and that an execution was, by previous order of the court, required to be issued. That involves a very nice question of law, but one which it is my duty to decide, and I decide that the judgment was a judgment, upon which the execution could issue," &c. *Was this error?*

We agree with the Circuit Judge, that the general subject of foreclosure was within the jurisdiction of the court which rendered the decree. But there can not arise here any question as to whether this is a collateral or a direct impeachment; for everything, which a mere inspection of the record discloses, is already in evidence and before the court. It is simply a question of power. See *Tederall* v. *Bouknight,* 25 S. C., 280. Could the court, in advance, render a valid judgment for a deficiency not yet ascertained, which might or might not ever exist? There was no adjudication of the court, after the sale, that there was a deficiency, or if so, for what specific sum, that being left to the plaintiff himself, or the sheriff, a mere ministerial officer. It seems to us, that this was something more than a mere irregularity—indeed, contrary to the very nature of a judgment, for the payment of money and the creation of a lien. The case in hand, as we think, furnishes a good illustration of the uncertainty and confusion necessarily incident to such a course.

The doctrine of the elementary writers is, that the judgment for the deficiency must be after the sale, and for a specific sum already ascertained. "A judgment, upon the foreclosure of a mortgage, does not become a lien upon any property not contained in the mortgage, until a sale had been made, the deficiency ascertained, and a judgment entered. * * * The judgment must be for a specific sum. If it be that an execution issue for any deficiency which may exist, after selling certain designated property, in all these cases, there is no judgment lien," &c. See Freem. Judg. (3d. edit.), §§ 339, 340. "The judgment contemplated is one for the balance of the debt remaining after applying towards it the proceeds of the sale. The first step is to ascertain what the amount of this balance

is. Therefore, a judgment for a deficiency can be had only when the sale is completed, and it can only be known what the deficiency is, upon the coming in of the report of sale, and the confirmation of this. The usual practice is for the referee to state the amount of the deficiency in his report of the sale * * * There can generally be no contingent judgment for such deficiency entered beforehand," &c. 2 Jones Mort., § 1799.

Besides, we think this question has already been decided in this State. It is true, that the case of *Freer* v. *Tupper*, 21 S. C., 75 (1883), is cited as holding the contrary, but that case plainly shows that it was decided on exceptional grounds, one of which was the failure of the defendant to raise the question of no judgment, when served with summons to renew the execution. In the case of *Dial* v. *Gary & Tappan*, 27 S. C. (1887), this court expressly reserved the question, which was substantially an admission that the question was still an open one. In *Hull* v. *Young*, 29 S. C., 71 (1888), it was held that in action for foreclosure of a mortgage, no personal judgment for a debt, or any part thereof, can be rendered against the mortgagor on his bond until after sale, and then only for the deficiency reported to be unpaid. In delivering the judgment of the court, the chief justice said: "In an action like this, it seems to us that no personal judgment for any specific sum of money can be rendered, even against the mortgagor, until the mortgaged premises have been sold, and the proceeds applied to the mortgage debt, for he can only be called upon in such an action to pay any deficiency in the proceeds of sale of the property pledged by him for payment of the debt, and we do not see how such deficiency can be ascertained until the property has been sold and the proceeds applied, and hence we do not see how any judgment for any specific sum of money can be rendered until the amount of such deficiency has been thus ascertained. This view is supported by the case of *Warren* v. *Raymond*, 12 S. C., 9. We think, therefore, it was error to render judgment to be enforced by execution for any specific sum of money before the mortgaged premises were sold, and the proceeds of such sale were found to be insufficient for the payment of the mort-

gage debt, where the plaintiff would be entitled to judgment for such deficiency, to be enforced against the mortgagor by executions," &c.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case remanded to the Circuit Court for a new trial.

MR. CHIEF JUSTICE MCIVER. I concur fully in the conclusion reached by Mr. Justice McGowan in the leading opinion in this case; but it may not be amiss to add thereto the following considerations. It being conceded that the title to the land in dispute descended to the plaintiff upon the death of his father, the only question is whether he has been legally divested of such title. This the defendant claims has been done by the sale by the sheriff under the alleged execution issued to enforce the payment of the deficiency remaining after the sale of the mortgaged premises in the case of Clowney, clerk, vs. Elkin, as administrator of the mortgagor, and the present plaintiff, as his heir at law, supported by the alleged execution issued to enforce the payment of the deficiency remaining after the sale of the mortgaged premises in the case of Pollard against the same parties. The jury having been instructed that the sale by the sheriff could not be sustained under the execution in the Clowney case, we need not, and, indeed, can not, consider the correctness of such instruction in a case like this (trial by a jury), even under the notice given by respondent's counsel, assailing the correctness of such instruction. *Bonham* v. *Bishop*, 23 S. C., 105, recognized in *Amaker* v. *New*, 33 S. C., 37, and *Fleming* v. *Fleming*, *Ibid.*, 510.

So that, it seems to me, that the only question now presented in the case is whether the Circuit Judge erred in charging that the sale might be sustained under the alleged execution issued in the Pollard case. The position taken by counsel for respondent, that this question has not been properly raised by the exceptions, cannot be sustained. That question, as it seems to me, is the turning point in the case, and was sufficiently presented by the third ground of appeal. It, therefore, must be considered. As I understand it, the Circuit Judge, while re-

cognizing the decision in the case of *Hull* v. *Young*, 29 S. C.,
64, in which it was held that, in an action for the foreclosure of
a mortgage of real estate, no personal judgment can be ren-
dered against the mortgagor for any deficiency until the amount
of the same has been ascertained by a sale of the mortgaged
premises, and an application of the proceeds of such sale has
been made to the mortgage debt, yet he instructed the jury that
the judgment for the deficiency not having been appealed from,
must stand as a valid judgment, even though erroneous, and,
therefore, constituted a sufficient basis for the execution issued
to enforce it, under which the sale in this case was made, or to
which it might be referred; and he cited the case of *Freer* v.
*Tupper*, 21 S. C., 75. That case, however, does not support
the view taken by the Circuit Judge. There the question
arose upon a motion for a non-suit, based upon the claim that
there was no evidence of a sale of the mortgaged premises, and
hence no basis for a judgment for any deficiency; but the court
held that there was *some* evidence that there had been a sale,
and the court held that there was no error on the part of the
Circuit Judge in submitting that question of fact to the jury,
and no error in refusing the motion for a non-suit. Besides, as
shown by Mr. Justice McGowan, there was another ground
amply sufficient to sustain the judgment in that case.

If, then, as is most conclusively shown in the opinion of Mr.
Justice McGowan, no personal judgment can be rendered for
any deficiency until after the sale of the mortgaged premises,
when alone the amount of such deficiency can be ascertained,
it follows, necessarily, as it seems to me, that anything pur-
porting to be a judgment for such deficiency rendered before
the amount thereof could possibly be ascertained, would be a
mere nullity, and would afford no basis for an execution to
enforce it. Indeed, it is utterly incomprehensible to me how
a judgment for the payment of money could be rendered before
the amount thereof had been, or could possibly be, ascertained.
Again, it seems to me that after a sale of the mortgaged prem-
ises has been made, the question, whether there is any deficiency,
and if so, the amount thereof, is a judicial question, upon which
the mortgagor has a right to be heard, as grave and difficult

questions might be presented as to the application of the proceeds·of the sale of the mortgaged premises, which surely ought not to be left to the decision of a mere ministerial officer who makes the sale, but which should be determined by the court. Indeed, the proceedings in this case, after the sale of the mortgaged premises, furnish a striking illustration of the propriety and necessity for the rule contended for.

If, then, no judgment can be rendered for any deficiency until the amount thereof has been judicially ascertained, it is quite clear that no execution can be issued to enforce such so-called judgment, and any paper purporting to be such is a mere nullity, and affords no authority to the sheriff for making a sale. Inasmuch, therefore, as the validity of a sale made by the sheriff depends upon the inquiry, whether the power has been conferred upon him by any valid process of law, it follows that unless such power has been conferred upon him, any attempted sale is a nullity, and confers no title upon the purchaser. If, as was held in *Sims* v. *Randall*, 2 Bay, 524, a sale made by a sheriff under an execution which had lost its active energy before any levy was made, is absolutely void, surely a sale under an execution which had never had any vitality must be likewise void. See *Sheriff* v. *Welborn*, 14 S. C., 480, and the cases therein cited. This, therefore, is not a case, as the Circuit Judge seemed to suppose, of a sale under an execution issued to enforce a judgment which was simply erroneous, but it is a case of a sale under an alleged judgment, which the court had no authority to render at the time it was entered.

MR. JUSTICE POPE. I dissent, and refer to my opinion in the case of *Cook* v. *Jennings* [next case *infra*, p. 205], to be filed to-morrow, as expressive of my views.

Judgment reversed.