BRYAN, Justice.
Philip Richardson appeals from a partial summary judgment entered by the Jefferson Circuit Court ("the trial court") in the action Richardson filed against Ben Chambless ("Ben"); Rosemarie Chambless ("Rosemarie"); Alaspec Residential Inspections, LLC ("Alaspec"); and Good Cents Home Inspections & Energy Management, LLC ("Good Cents"). For the reasons set forth herein, we dismiss the appeal.
Facts and Procedural History
In 2011, Richardson filed a complaint against Ben, Alaspec, and Good Cents in which he requested a jury trial on multiple claims arising from an allegedly faulty inspection the defendants had performed on a house Richardson was in the process of purchasing.[1] In June 2012, the trial court entered a default judgment against Good Cents for failure to answer and, following a hearing, entered an order in July 2012 awarding Richardson $80,281.28 against Good Cents based on findings that the inspection report failed to disclose material defects in the house and that Richardson would not have purchased the house if the inspection report had disclosed those defects.[2]
In March 2013, Richardson amended his complaint to add Rosemarie, who was *686 Ben's wife at the time, as a defendant. In his amended complaint, Richardson alleged that, in December 2012, Ben had transferred his interest in the Chamblesses' marital residence to Rosemarie ("the transfer") and that Ben had made the transfer because, Richardson said, Ben "knew he was going to incur ... a foreseeable judgment in the lawsuit filed by ... Richardson" and knew that making the transfer "would impair his ability to pay this ... judgment."[3] Given those allegations, Richardson asserted a claim against Ben and Rosemarie under the Alabama Fraudulent Transfer Act, § 8-9A-1 et seq., Ala. Code 1975 ("the AFTA"), and sought as relief an order voiding the transfer, enjoining any further encumbrance or disposition of Ben's interest in the marital residence, and attaching that interest for the satisfaction of any judgment Richardson might obtain against Ben. Richardson also asserted against Ben and Rosemarie a conspiracy-to-commit-fraud claim arising from the transfer and, pursuant to § 6-6-180, Ala. Code 1975, sought to compel Ben and Rosemarie "to produce an itemized list ... of all of their assets" to "be subject to the payment of [Richardson's] claims/judgments/debts."
In October 2017, Rosemarie filed a motion for a summary judgment on Richardson's claims against her. On November 16, 2017, the trial court entered a judgment in which it found that there were no genuine issues of material fact as to Richardson's claims against Rosemarie and that Rosemarie was therefore entitled to a judgment as a matter of law on those claims. Richardson's claims against Ben and Alaspec remained pending, but the trial court, finding that there was no just reason for delay, certified its partial summary judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. Richardson appealed.
Discussion
On appeal, Richardson argues that there are genuine issues of material fact that preclude a summary judgment as to his claims against Rosemarie. However, before reaching the merits of the parties' arguments, we must first determine whether the trial court's Rule 54(b) certification was proper, because, if it was not, then the trial court's partial summary judgment is not a final judgment and will not support Richardson's appeal. See Stephens v. Fines Recycling, Inc., 84 So.3d 867, 872 (Ala. 2011) (" '[I]f a Rule 54(b) certification is determined to have been improperly entered, the judgment so certified is considered to be nonfinal and therefore unable to support an appeal.' " (quoting Allen v. Briggs, 60 So.3d 899, 904 (Ala. Civ. App. 2010) ) ); Kirksey v. Johnson, 166 So.3d 633, 643 (Ala. 2014) (dismissing an appeal as one arising from a nonfinal judgment after concluding that the trial court's Rule 54(b) certification was improper); and Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354 (Ala. 2004) (same).[4]
" Rule 54(b) provides, in part:
*687 " 'When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.'
"This Court recently explained [in Centennial Associates v. Guthrie, 20 So.3d 1277, 1279 (Ala. 2009),] the appropriate standard for reviewing Rule 54(b) certifications, stating:
" ' "If a trial court certifies a judgment as final pursuant to Rule 54(b), an appeal will generally lie from that judgment." Baugus v. City of Florence, 968 So.2d 529, 531 (Ala. 2007).' "
Lighting Fair, Inc. v. Rosenberg, 63 So.3d 1256, 1263 (Ala. 2010).
"However, this Court will not consider an appeal from a judgment certified as final under Rule 54(b) if it determines that the trial court exceeded its discretion in concluding that there is 'no just reason for delay.' Rule 54(b) ; see also Scrushy v. Tucker, 955 So.2d 988, 996 (Ala. 2006) ('Whether there was "no just reason for delay" is an inquiry committed to the sound discretion of the trial court, and, as to that issue, we must determine whether the trial court exceeded its discretion.')."
Loachapoka Water Auth., Inc. v. Water Works Bd. of Auburn, 74 So.3d 419, 422-23 (Ala. 2011).
"[I]n considering whether a trial court has exceeded its discretion in determining that there is no just reason for delay, several United States Courts of Appeals have expressly considered whether the resolution of claims that remain pending in the trial court may moot claims presented on appeal.[5] In MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849 (4th Cir. 2010), the United States Court of Appeals for the Fourth Circuit explained:
" 'In determining whether there is no just reason for delay in the entry of judgment, factors the district court should consider, if applicable, include:
" ' "(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.
" ' Braswell [Shipyards, Inc. v. Beazer E., Inc. ], 2 F.3d [1331,] 1335-36 [ (4th Cir. 1993) ] [footnote omitted] (quoting Allis-Chalmers Corp. v. Phila. Elec. Co., 521 F.2d 360, 364 (3d Cir. 1975) [overruled on other grounds by Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1 (1980) ] ).'
" 610 F.3d at 855 (emphasis added). The United States Courts of Appeals for the Third and Sixth Circuits have also used the factors identified in MCI Constructors . See, e.g., Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 203 (3d Cir. 2006) ; and Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc., 807 F.2d 1279, 1283 (6th Cir. 1986).
*688 "Additionally, the United States Courts of Appeals for the Seventh and First Circuits have specifically considered mootness in determining whether there is no just reason for delay in the entry of a judgment under Rule 54(b), Fed. R. Civ. P. See, e.g., Lottie v. West American Ins. Co., 408 F.3d 935, 940 (7th Cir. 2005) ('[W]e might never have to consider at all the bad faith and race discrimination claims if the contract claim is resolved in favor of West American. There would be no reason to consider whether the insurer's breach was so egregious that it amounted to bad faith if there was no breach. Likewise, there would be no reason to consider whether West American breached the contract on account of race if West American did not in fact breach the contract.'); Horn v. Transcon Lines, Inc., 898 F.2d 589, 592 (7th Cir. 1990) ('The possibility that developments in the litigation may moot a claim suggests that appellate resolution be deferred.'); Spiegel v. Trustees of Tufts College, 843 F.2d 38, 44-45 (1st Cir. 1988) ('Should Spiegel prevail on Count IV-and we intimate no view of the matter-she might well have her tenure, her monetary balm, and payment for her litigation expenses. The first three statements of claim would be largely (if not entirely) mooted and the need for appellate review would vanish. Appellate courts, understandably, have treated such a possibility as a major negative in the Rule 54(b) equation.').
"___________________
"[5]'Federal cases are authoritative in construing the Alabama Rules of Civil Procedure because the Alabama rules were patterned after the Federal Rules of Civil Procedure. Cutler v. Orkin Exterminating Co., 770 So.2d 67, 70 n. 2 (Ala. 2000).' Borders v. City of Huntsville, 875 So.2d 1168, 1176 n. 2 (Ala. 2003). Rule 54(b), Ala. R. Civ. P., is nearly identical to its federal counterpart, Rule 54(b), Fed. R. Civ. P."
Lighting Fair, 63 So.3d at 1264-65 (final emphasis added).
"This Court looks with some disfavor upon certifications under Rule 54(b).
" 'It bears repeating, here, that " '[c]ertifications under Rule 54(b) should be entered only in exceptional cases and should not be entered routinely.' " State v. Lawhorn, 830 So.2d 720, 725 (Ala. 2002) (quoting Baker v. Bennett, 644 So.2d 901, 903 (Ala. 1994), citing in turn Branch v. SouthTrust Bank of Dothan, N.A., 514 So. 2d 1373 (Ala. 1987) )....'
" Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 363 (Ala. 2004)...."
Schlarb v. Lee, 955 So.2d 418, 419 (Ala. 2006).
Given the current posture of this case, we conclude that the trial court exceeded its discretion by certifying its partial summary judgment as final pursuant to Rule 54(b) because there is a " ' "possibility that the need for review [of that judgment] might ... be mooted by future developments in the [trial] court." ' " Lighting Fair, 63 So.3d at 1264 (quoting MCI Constructors LLC v. City of Greensboro, 610 F.3d 849, 855 (4th Cir. 2010), quoting in turn Braswell Shipyards, Inc. v. Beazer E., Inc., 2 F.3d 1331, 1335 (4th Cir. 1993) ).
The AFTA "provides ... remed[ies] for a creditor who alleges that a debtor has fraudulently transferred assets in order to avoid satisfying the debt." Ex parte HealthSouth Corp., 974 So.2d 288, 293 (Ala. 2007) (emphasis added). However, those remedies are available only to a creditor of the debtor who made the allegedly fraudulent transfer. See id. (noting that " ' "[a] fraudulent conveyance is valid as to all the world except creditors of the grantor" ' " and, thus, that a fraudulent-transfer *689 claimant has no viable claim unless the claimant "fit[s] within the definition of a creditor in the [AFTA]" (quoting Woodard v. Funderburk, 846 So.2d 363, 366 (Ala. Civ. App. 2002), quoting in turn Bank of Lexington v. Jones, 456 So.2d 784, 785 (Ala. 1984) (interpreting the predecessor statute to the AFTA) (emphasis added) ) ). See also §§ 8-9A-4 and -5, Ala. Code 1975 (providing that "[a] transfer made by a debtor is fraudulent as to a creditor" and detailing the circumstances under which such a transfer is deemed fraudulent (emphasis added) ). Thus, Richardson has a potentially viable fraudulent-transfer claim against Rosemarie only if he is a creditor of Ben's.
The AFTA defines "creditor" as "[a] person who has a claim," § 8-9A-1(4), Ala. Code 1975, and defines "claim," in pertinent part, as "[a] right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 8-9A-1(3), Ala. Code 1975. Thus, Richardson is currently a creditor of Ben's by virtue of his pending claims against Ben regarding the allegedly faulty inspection, despite the fact that those claims have not been adjudicated in Richardson's favor and reduced to judgment. See Granberry v. Johnson, 491 So.2d 926, 928 (Ala. 1986) ("The debtor-creditor relationship is created not by a judgment, but by the wrong which produces the injury .... Hence, a tort claimant is a creditor, and the alleged tortfeasor is the debtor." (interpreting the predecessor statute to the AFTA) (internal citation omitted) ). See also Jesse P. Evans, Alabama Property Rights and Remedies § 31.2 at 31-8 (5th ed. 2012) ("The term 'creditor' is not given a narrow and technical interpretation but a broad and expansive meaning that includes all persons who have a claim, demand, suit, or interest that may be delayed or hindered by the conduct of the debtor." (emphasis added) ). However, although Richardson is not required to reduce his claims against Ben to a judgment in order to obtain creditor status as to Ben, the fact that he has yet to obtain a judgment on those claims is relevant-and, in fact, dispositive, in this case-in determining whether the need for review of the trial court's partial summary judgment on Richardson's claims against Rosemarie might be rendered moot by future developments in the trial court.
In short, Ben's liability to Richardson on the claims arising from the allegedly faulty inspection has yet to be established and, significantly, might never be established. To be clear, we express no opinion on that matter. For our purposes, it is sufficient to note that it is at least possible that Ben will ultimately prevail against Richardson's pending claims against him. If he does, Richardson will no longer have a "right to payment" from Ben, § 8-9A-1(3), and, thus, at that point, will no longer be a creditor of Ben's. § 8-9A-1(4). Cf. Carr v. Guerard, 365 S.C. 151, 616 S.E.2d 429 (2005) (holding that a creditor who had obtained a judgment against the debtor was no longer a creditor of the debtor for purposes of a fraudulent-transfer claim once the judgment expired); and RRR, Inc. v. Toggas, 98 F.Supp.3d 12 (D.D.C. 2015) (same).[5] If Richardson ceases to be a creditor of Ben's after resolution of the pending claims, then he will cease to have a viable fraudulent-transfer claim against Rosemarie. Ex parte HealthSouth Corp., supra . Thus, it is readily apparent that future developments in the trial court *690 could potentially deprive Richardson of his current creditor status as to Ben and, as a result, could potentially moot Richardson's fraudulent-transfer claim against Rosemarie, thereby obviating any need for this Court to review the propriety of the trial court's partial summary judgment in Rosemarie's favor.[6] That possibility, coupled with the disfavor with which this Court views Rule 54(b) certifications, Schlarb, supra, is " 'a major negative in the Rule 54(b) equation' " and " 'suggests that appellate resolution be deferred.' " Lighting Fair, 63 So.3d at 1265 (quoting, respectively, Spiegel v. Trustees of Tufts Coll., 843 F.2d 38, 45 (1st Cir. 1988), and Horn v. Transcon Lines, Inc., 898 F.2d 589, 592 (7th Cir. 1990) ). See Lighting Fair, 63 So.3d at 1265 (holding that a Rule 54(b) certification of a summary judgment in the defendants' favor was improper because the plaintiffs' claim could be rendered moot by resolution of other claims that were pending in arbitration).
Conclusion
Because resolution of Richardson's pending claims against Ben regarding the allegedly faulty inspection could potentially moot the claims adjudicated by the trial court's partial summary judgment, the trial court's Rule 54(b) certification of that judgment was improper. Lighting Fair, supra. Accordingly, we must dismiss the appeal on the basis that it arises from a nonfinal judgment. Stephens, supra.
APPEAL DISMISSED.
Stuart, C.J., and Parker, Main, and Mendheim, JJ., concur.

Richardson's complaint named additional defendants, but those defendants were eventually dismissed.

It appears that Good Cents was dissolved approximately two weeks after the trial court's July 2012 order.

Ben made the transfer in conjunction with a complaint for legal separation he filed in December 2012. Ben and Rosemarie divorced in 2015.

The parties do not discuss the propriety of the trial court's Rule 54(b) certification. Nevertheless, we address that issue ex mero motu because of the potential jurisdictional bar it raises. See Fuller v. Birmingham-Jefferson Cty. Transit Auth., 147 So.3d 907, 911 (Ala. 2013) ("At the outset, we note that none of the parties argues on appeal that the trial court's certification of its summary-judgment order as final under Rule 54(b) was inappropriate. However, jurisdictional matters, such as whether an order is final so as to support an appeal, are of such importance that an appellate court may take notice of them ex mero motu.").

Richardson has not alleged that Ben is personally liable on the judgment against Good Cents, a limited-liability company, and that he is therefore a creditor of Ben's by virtue of that judgment, nor has Richardson alleged that he is a creditor of Ben's in any other respect.

Richardson's conspiracy-to-commit-fraud claim against Rosemarie and his request for discovery of Rosemarie's assets, both of which are grounded on the allegedly fraudulent transfer, would likewise cease to be viable in the absence of a viable fraudulent-transfer claim.