JUSTICE HEARN :
**387 We granted certiorari on the narrow question of whether a creditor may execute on a judgment more than ten years after its enrollment when the time period has expired during the course of litigation. Our resolution of this case requires us to revisit our decision in Linda Mc ,[1] which the court of appeals broadly interpreted as extending a judgment's life beyond the statutory ten-year limit merely by filing the action within ten years. Gordon v. Lancaster , 419 S.C. 48, 795 S.E.2d 857 (Ct. App. 2016). We reverse and overrule Linda Mc .
FACTUAL BACKGROUND
In December of 2001, Rudolph Drews, the now-deceased uncle of Petitioner Donald Lancaster, was found liable in a civil action for violating securities laws in an investment scheme for a new business venture in *174 Charleston. Judgment **388 was enrolled against Drews in March of 2002; over the next three years, the court of appeals affirmed and this Court denied certiorari. Thereafter, in August of 2006, Respondent Frank Gordon, a creditor on the 2002 judgment, filed a petition in the circuit court for supplemental proceedings. The court granted the petition, and a hearing ensued one month later, wherein Gordon's counsel became suspicious that Drews' wife and Lancaster were complicit in shielding Drews' assets from creditors. Gordon noted, "[Drew's wife] is intertwined in this, and we believe the nephew is, too, by these gifts." This hearing was continued when Drews failed to produce tax and financial documents.
A year later, in September of 2007, Rudolph Drews died, and his estate was opened shortly thereafter. Gordon sought to continue supplemental proceedings, but delays in administering the estate arose. In February of 2010, Lancaster was deposed as part of supplemental proceedings, which confirmed Gordon's suspicions that he and Drews' wife were involved in shielding Drews' assets. Soon after, one day before her scheduled deposition, Drews' wife died.
On November 2, 2010, Gordon filed this action, asserting Lancaster assisted Drews in hiding assets from creditors in violation of the Statute of Elizabeth.[2] A year later, in November of 2011, Drews' estate confessed judgment of $293,703.43, and his wife's estate settled with Gordon for $60,000. Both estates assigned their interests to him.
A two-day bench trial occurred in June of 2013, wherein Lancaster moved for a directed verdict based on Gordon's prior concession that this suit was based on the 2001 judgment. Therefore, according to Lancaster, because more than ten years had elapsed from the date the judgment was entered, the judgment's "active energy" had expired. The court disagreed, relying on this broad language in Linda Mc : "If a party takes action to enforce a judgment within the ten-year statutory period of active energy, the resulting order will be effective even if issued after the ten-year period has expired."
**389 Thus, the court denied the motion and found in favor of Gordon for $211,677.30.
Lancaster appealed to the court of appeals, and in a split decision, the majority, relying on Linda Mc , held the trial court correctly determined section 15-39-30 did not bar satisfaction of the 2001 judgment because Gordon had timely filed this action within the ten-year window and continued to pursue it. Gordon , 419 S.C. at 58, 795 S.E.2d at 862. The dissent found the facts here distinguishable from Linda Mc , noting "[Gordon] had only filed the present action in the circuit court and settled his allegations against the Drews' estates. Although [Gordon] filed this action prior to the expiration of the ten-year period, he was not 'merely waiting on the court's order regarding execution and levy....' " Id. at 63, 795 S.E.2d at 865 (Thomas, J., dissenting). Additionally, the dissent noted the merits hearing did not occur for over a year after the ten-year period expired, and therefore posited that extending Linda Mc "thwarts the public policy of this state that limits the life of a judgment to ten years." Id. at 64, 795 S.E.2d at 865. While Lancaster sought certiorari on multiple issues, this Court granted certiorari solely on whether the judgment retained "active energy" and thus, was enforceable.
ISSUE
Does a judgment's ten-year "active energy" terminate when the judgment creditor's enforcement action remains untried when the ten-year period expires, or conversely, does a judgment creditor's mere institution of the enforcement action within ten years extend that ten-year period indefinitely until trial is held and a final order is issued?
STANDARD OF REVIEW
The interpretation of a statute is a question of law, which an appellate court is free to decide without deference to the trial court. Town of Summerville v. City of N. Charleston , 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008).
*175 DISCUSSION
Lancaster contends the court of appeals erroneously expanded this Court's holding in Linda Mc , effectively nullifying **390 the statutory ten-year limit to execute on a judgment. Conversely, Gordon asserts the court of appeals correctly followed Linda Mc , noting he timely filed this action within the ten-year period and continued to pursue satisfaction of the judgment.
Section 15-39-30 provides,
Executions may issue upon final judgments or decrees at any time within ten years from the date of the original entry thereof and shall have active energy during such period, without any renewal or renewals thereof , and this whether any return may or may not have been made during such period on such executions.
S.C. Code Ann. § 15-39-30 (2005) (emphasis added). According to the statute's plain language, a creditor has ten years to execute on the judgment from the date of its entry, a time period that cannot be renewed.
Linda Mc is this Court's most recent decision addressing section 15-39-30. There, the parties executed a judgment by confession on June 2, 1995. Linda Mc , 390 S.C. at 548, 703 S.E.2d at 501. While the judgment debtor paid a portion of the judgment thereafter, Linda Mc filed a petition for supplemental proceedings nine years after the effective date of the judgment, arguing the debtor had assets subject to execution. Id. at 549, 703 S.E.2d at 502. The trial court granted the petition and referred the matter to a special referee, who held two hearings before the ten-year time period expired. Id. at 549-50, 703 S.E.2d at 502. The referee issued a report in favor of the judgment creditor and the circuit court issued an order of execution, both on June 3, 2005, one day after the time period terminated. Id. at 550, 703 S.E.2d at 502. Despite the passage of more than ten years, the Court held the judgment continued to have "active energy," initially noting
We want to stress that this is a narrow holding limited to facts similar to those at issue in this case. Hence, when a party has complied with the applicable statutes, as Respondent did in this case, and is merely waiting on a court's order regarding execution and levy, the ten year limitation found in section 15-39-30 is extended to when the court finally issues an order.
**391 Id. at 554-55, 703 S.E.2d at 505 (emphasis added). However, in the next paragraph, the Court explained, "While the order came after the ten-year period, a petition for supplemental proceedings was filed before the ten-year period expired. Therefore, the judgment had active energy on June 3, 2005, because that order was the result of the supplemental proceedings filed during the ten-year period." Id. at 555, 703 S.E.2d at 505. Finally, the Court concluded, "[i]f a party takes action to enforce a judgment within the ten-year statutory period of active energy, the resulting order will be effective even if issued after the ten-year period has expired." Id. It is this language the court of appeals relied on in holding the judgment in the instant case retained active energy.[3]
We note Linda Mc represents a departure from this Court's historic approach in analyzing section 15-39-30, and while we appreciate the compelling facts at issue therein, the decision has created confusion in what was heretofore a well-settled area of the law. Accordingly, we overrule it and return to the traditional bright-line rule. Nevertheless, even if Linda Mc were to remain good law, the court of appeals erred in relying on it and Hardee v. Lynch , 212 S.C. 6, 46 S.E.2d 179 (1948), to grant relief to Gordon. In Linda Mc , the order of execution was issued only one day after expiration of the ten-year time period, whereas here, the hearing was not even held until over a year past expiration of the time period, and an order of execution has still not been issued. Moreover, Hardee is inapposite because the statute at issue there expressly granted a party the opportunity to revive or extend the active life *176 of a judgment after ten years by seeking leave of the court, provided the action was filed within twenty years of the judgment. Id. at 12, 46 S.E.2d at 181-82. As the Court in Hardee explained, "Our statutes...and without reference to the repealing statute of 1946 -clearly evince the legislative purpose to nullify the effective force of a judgement after ten years, unless revived, or suit thereon be brought before the **392 expiration of the period allowed by law." Id. at 14, 46 S.E.2d at 182 (emphasis added). However, the General Assembly subsequently removed the ability to extend the life of a judgment, as the court noted: "[The amended statute] embodies the substantive law of the state. It provides no limitation period, but completely destroys any right of action upon judgments. The logical result...was to utterly extinguish a judgment after the expiration of ten years from the date of entry." Id. at 17, 46 S.E.2d at 183. Indeed, in repealing the prior statute that provided a renewal mechanism, this Court concluded the amended provision "radically changed the operation and effect of existing statutes governing limitation of actions on judgments." U.S. Rubber Co. v. McManus , 211 S.C. 342, 345, 45 S.E.2d 335, 336 (1947).
After Hardee , this Court again noted the General Assembly's intent to "utterly extinguish" a judgment after ten years in Garrison v. Owens , 258 S.C. 442, 189 S.E.2d 31 (1972). There, a creditor sought to enforce a judgment lien by filing an action approximately two months before the ten-year time period expired. During the course of litigation, the ten years expired, and over a year later, the defendant moved to dismiss, arguing the time period was not extended by filing the action within ten years. Id. at 445, 189 S.E.2d at 32. This Court agreed, noting, "A judgment lien is purely statutory, its duration as fixed by the legislature may not be prolonged by the courts and the bringing of an action to enforce the lien will not preserve it beyond the time fixed by the statute, if such time expires before the action is tried." Id. at 446-47, 189 S.E.2d at 33.[4] While the Linda Mc Court declared in a footnote that the more equitable approach is to provide an exception to the bright-line rule in similar cases-we believe the proper approach is to leave the policy concerns regarding this provision to the General Assembly. Therefore, we overrule Linda Mc .
Our decision is in accord with how we have historically interpreted section 15-39-30. Home Port Rentals, Inc. v. Moore , 369 S.C. 493, 496, 632 S.E.2d 862, 863 (2006) ("This **393 Court has consistently held that under the statute, a judgment becomes stale and a judgment lien is extinguished after ten years."); Garrison , 258 S.C. at 446-47, 189 S.E.2d at 33. Although Gordon argues our approach is in isolation compared with other jurisdictions, we must remain faithful to the text of the act. While some states do not statutorily set forth a revival period, others do, which render those decisions inapposite to this analysis. See, e.g. , Good v.Kleinhammer , 122 Kan. 105, 251 P. 405 (1926) (state with a revival statute); Ellis v. McCrary , 52 Ga.App. 583, 183 S.E. 823 (1936) (analyzing a statute that authorized a creditor to revive a dormant judgment as a statute of limitations); Thomas v. Towns , 66 Ga. 78 (1880) (noting a dormant judgment can be revived). Conversely, section 15-39-30 is not a statute of limitations, as even the majority in Linda Mc acknowledged. Linda Mc , 390 S.C. at 554, 703 S.E.2d at 505. Further, in dissent, then-Justice Beatty explained it is clearly a statute of repose. Linda Mc , 390 S.C. at 558, 703 S.E.2d at 507 (Beatty, J., dissenting). Therefore, we decline to judicially adopt an exception to the bright-line rule that a judgment expires after ten years from its enrollment.[5] *177 CONCLUSION
We overrule Linda Mc and reverse the court of appeals.[6]
REVERSED.
BEATTY, C.J., and KITTREDGE, J., concur. FEW, J., concurring in a separate opinion. JAMES, J., concurring in part and dissenting in part in a separate opinion.
JUSTICE FEW :
**394 I concur in the result reached by the majority as to the outcome of this case. I disagree, however, that we should overrule the actual holding in Linda Mc Co. v. Shore , 390 S.C. 543, 703 S.E.2d 499 (2010). I would reverse the decision of the court of appeals on the narrow basis explained by Judge Thomas in her dissent. See Gordon v. Lancaster , 419 S.C. 48, 63, 795 S.E.2d 857, 865 (Ct. App. 2016) (Thomas, J., dissenting) (explaining Gordon "was not 'merely waiting on the court's order regarding execution and levy' as was the situation in Linda Mc "(quoting Linda Mc , 390 S.C. at 554, 703 S.E.2d at 505 ) ).
In Linda Mc , this Court created what we called a "narrow" exception to the bright-line ten-year limitation for the issuance of an execution on a judgment, which is clearly set forth in section 15-39-30 of the South Carolina Code (2005). See **395 390 S.C. at 554, 703 S.E.2d at 505 (stating, "We want to stress that this is a narrow holding ...."). Nevertheless, the Linda Mc Court proceeded to rewrite section 15-39-30 in expansive terms that were completely unnecessary to resolve the narrow dispute before the Court in that case. The Court's expansive language appeared to drastically extend the period of time in which an execution may be issued. 390 S.C. at 555, 703 S.E.2d at 505. However, because the Court's expansive statement was not necessary to the decision of the case, the statement is dictum. See Nash v. Tindall Corp. , 375 S.C. 36, 40-41, 650 S.E.2d 81, 83 (Ct. App. 2007) (explaining "dictum 'is a statement on a matter not necessarily involved in the case, ... is not binding as authority ..., [and] is not the court's decision.' " (quoting 21 C.J.S. Courts § 227 (2006) ). Dictum is not the law.
The majority explains-as did Judge Thomas-the facts of this case are different from the facts in Linda Mc . "In Linda Mc , the order of execution was issued only one day after expiration of the ten-year time period, whereas here, the hearing was not even held until over a year past expiration of the time period." Supra , op. at 175; see also Gordon , 419 S.C. at 63, 795 S.E.2d at 865 (Thomas, J., dissenting). Because of this difference-which I view as a significant difference-the "narrow" exception the Court created *178 in Linda Mc provides Gordon no relief. To resolve this case, therefore, the Court need only find "the 'narrow' exception the Court created in Linda Mc provides Gordon no relief," and the court of appeals erred in holding it did. It is not necessary to our decision in this case that we overrule Linda Mc . Therefore, the majority's statement that we do overrule Linda Mc is itself dictum, just like the expansive language in Linda Mc was in the first place. Dictum is not the law.
JUSTICE JAMES :
I respectfully concur in part and dissent in part. I agree LindaMc Co., Inc. v. Shore[7] should be overruled, and I agree it should be overruled prospectively. However, I disagree with the majority's conclusion that this case does not fall within the exception recognized in Linda Mc .
**396 In Linda Mc , the judgment creditor commenced supplemental proceedings nine years after obtaining its judgment and the matter proceeded to a hearing within the ten-year active energy of the judgment. 390 S.C. at 549, 703 S.E.2d at 502. The day after the ten-year life of the judgment would have expired, the circuit court issued an order granting relief to the judgment creditor. Id . at 550, 703 S.E.2d at 502. We held the judgment continued to have active energy through the date the order was issued. Id . at 554-55, 703 S.E.2d at 505. We concluded the "more equitable approach" was to provide an exception to the bright-line rule that extinguished a judgment upon the passage of ten years, if the time expired before the action was tried. Id . at 554 n.7, 703 S.E.2d at 505 n.7. This was a drastic departure from our holding in Garrison v. Owens ,[8] which we overruled in Linda Mc "to the extent [it is] inconsistent with this opinion."
In Linda Mc , we emphasized that the narrowness of our holding was "limited to facts similar to those at issue in this case." 390 S.C. at 554, 703 S.E.2d at 505 (emphasis added). Note we did not state that our holding was limited to "facts identical" to those in Linda Mc . Instead, we further explained the parameters of our holding when we concluded the judgment retained its active energy "because [the circuit court] order was the result of the supplemental proceedings filed during the ten-year period." Id . at 555, 703 S.E.2d at 505. We ended our discussion of the timeliness issue by stating, "Furthermore, if a party takes action to enforce a judgment within the ten-year statutory period of active energy, the resulting order will be effective even if issued after the ten-year period has expired." Id. (emphasis added). It is this language upon which the court of appeals understandably relied when it concluded Gordon's judgment retained its active energy under the instant circumstances. Gordon "took action to enforce his judgment" by commencing his supplemental proceedings within the ten-year active energy of the judgment, and the circuit court order granting him relief was "the result of the supplemental proceedings filed during the ten-year period." Gordon's circumstances undeniably fall within the confines we staked out in Linda Mc .
**397 Both the court of appeals and Gordon relied upon this Court's retreat from Garrison and our clear dictate in Linda Mc that the narrowness of our holding was "limited to facts similar to those at issue" in Linda Mc . However, the majority has re-defined our holding to apply only to "facts identical" to those in Linda Mc . The majority notes the confusion created by our holding in Linda Mc but concludes Gordon's efforts to collect his judgment are for naught. Respectfully, I find that conclusion equally confusing.
With regard to Justice Few's concurrence, I will not delve into the vagaries of whether certain parts of this Court's conclusions in Linda Mc are dicta or not. Justice Few concludes some parts are dicta. I disagree. The analytical exercise of trying to determine what parts are dicta and what parts are not dicta ignores the obvious: this Court issued an opinion in Linda Mc explaining its rationale for extending the active energy of a judgment that was outside the ten-year bounds of section 15-39-30 of the South Carolina Code (2005). This rationale for extending *179 the active energy of the judgment was, in part, predicated upon the fact that the judgment creditor "[took] action to enforce a judgment within the ten-year statutory period of active energy." Linda Mc , 390 S.C. at 555, 703 S.E.2d at 505. And again, this Court recognized the circuit court order granting relief was "the result of the supplemental proceedings filed during the ten-year period." Id.
I concur in the majority's prospective overruling of Linda Mc . However, I dissent from the majority's conclusion that the facts in this case do not fall within the exception recognized in Linda Mc . I would not apply the overruling of Linda Mc to pending supplemental proceedings in other cases with "facts similar" to those found in Linda Mc . I would also afford appropriate protection to those other judgment creditors who have relied upon our holding in Linda Mc in planning their collection efforts. To protect such other creditors whose judgments may have otherwise expired, I would not apply the overruling of Linda Mc to cases in which supplemental proceedings are commenced within one hundred eighty (180) days of the date the remittitur in this case is sent to the lower court, provided the proceedings are commenced within the ten-year period of active energy of the subject judgment.

Linda Mc Co. v. Shore , 390 S.C. 543, 703 S.E.2d 499 (2010).

For further background on the specific transactions, we refer to the court of appeals' recitation of the facts. Gordon v. Lancaster , 419 S.C. 48, 795 S.E.2d 857 (Ct. App. 2016)

We note the issue before us today involves precisely the confusion former Justice Pleicones predicted in a footnote, stating, "Either the period is extended so 'long as a party has taken steps within the ten year period to enforce the judgment' or such an extension is limited to the majority's 'narrow holding' and 'limited to facts similar to those at issue in this case.' " Linda Mc , 390 S.C. at 562 n.9, 703 S.E.2d at 509 n.9.

While the Court in Linda Mc overruled Garrison , it only did so "to the extent [it is] inconsistent with this opinion." Linda Mc , 390 S.C. at 555 n.8, 703 S.E.2d at 505 n.8. Regardless, Garrison is good law in light of today's decision.

As an additional sustaining ground, Gordon argues that as an assignee of the Drews' estates, the judgment is timely because the estates' rights did not accrue until after the Drews' deaths. However, his amended complaint demonstrates that he still seeks to execute upon the 2001 judgment, noting "By these assignments, Plaintiff does not seek to enlarge or change the judgment upon which he is suing; Plaintiff is still collecting on the 2001-2002 Trial Judgments...." Therefore, we reject Gordon's additional sustaining ground. See Carr v. Guerard , 365 S.C. 151, 154, 616 S.E.2d 429, 431 (2005) ("South Carolina courts will not permit a litigant to bypass the ten-year limitation on executions by styling an action as something other than an action to execute.").

We overrule Linda Mc prospectively, yielding protection only to pending cases that fall within its narrow holding. See Steinke v. S.C. Dep't of Labor, Licensing & Regulation , 336 S.C. 373, 399, 520 S.E.2d 142, 155 (1999) (holding decisions creating new substantive rights should be applied prospectively). However, this decision affords no relief to Gordon because he cannot fall within the very limited exception to the ten-year rule articulated in Linda Mc where the hearing was held prior to expiration of the judgment, and the only thing needed to conclude the case was issuance of the order. While the concurrence agrees with this conclusion, it also suggests that we need not overrule Linda Mc because the broad language contained therein was mere dictum. Curiously, the concurrence then posits that our decision to overrule Linda Mc is in itself mere dictum. To be clear, we are overruling Linda Mc not only because it is contrary to the unequivocal language contained in Section 15-39-30, but also because, as former Justice Pleicones predicted, it created confusion in a previously settled area of the law. Moreover, we disagree that our analysis is mere dictum, but even assuming arguendo that it is, in the words of former Chief Judge Sanders:
[T]hose who disregard dictum, either in law or in life, do so at their peril. We are reminded of the apocryphal story of a duel which was about to take place in a saloon. One of the antagonists was an unimposing little man, thin as a rail-but a professional gunfighter. The other was a big, bellicose fellow who tipped the scales at 300 pounds. "This ain't fair," said the big man, backing off. "He's shooting at a larger target." The little man quickly moved to resolve the matter. Turning to the saloon keeper, he said, "Chalk out a man of my size on him. Anything of mine that hits outside the line don't count."
Yaeger v. Murphy , 291 S.C. 485, 490 n.2, 354 S.E.2d 393, 396 n.2 (Ct. App. 1987) (quoting Paul Trachtman, The Gunfighters 39 (1974) ).

390 S.C. 543, 703 S.E.2d 499 (2010).

258 S.C. 442, 189 S.E.2d 31 (1972).